# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 20-03129-03-CR-S-SRB |
| CHRISTINE MARIE ROSSITER, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Ami Harshad Miller, Assistant United States Attorney, and the defendant, Christine Marie Rossiter ("the defendant"), represented by Erica Mynarich.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to the Count 1 of the indictment, which charges her with a violation of 18 U.S.C. § 2252(A)(g), that is, child exploitation enterprise. By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

> Beginning on an unknown date, but as early as January 1, 2017, and continuing through November 6, 2019, said dates being approximate, in Greene County, and elsewhere, in the Western District of Missouri, the defendant, Christine Marie Rossiter, acting with co-defendants Kevin Grant McMillan, Amber Marie Baley, Angela Marie Brown, and Casie Dee Rice, did knowingly engage in a child exploitation enterprise, that is, the defendants violated Chapter 110 of Title 18 of the United States Code, as part of a series of felony violations constituting three or more separate incidents and involving more than one minor victim, that being sexual exploitation of a minor (18 U.S.C. § 2251(a)) and receipt and distribution of child pornography (18 U.S.C. § 2252(a)(2)).
>
> On March 30, 2019, Google initiated CyberTip 48129755 with the National Center for Missing and Exploited Children (NCMEC). Google reported that an account holder with the Gmail address (Google's email application) "er9547@gmail.com" had uploaded files of child pornography to the Gmail infrastructure on March 29, 2019. Google reported that the Google account was registered under the name "Kevin McMillan." On May 14, 2019, Homeland Security Investigations (HSI) and Southwest Missouri Cyber Crimes Task Force Officer (SMCCTF) Brian Martin reviewed the three files submitted with the CyberTip and confirmed that they contained child pornography, that is, a child less than 18 years of age engaged in sexually explicit conduct.
>
> On May 29, 2019, TFO Martin applied for and received a federal search warrant for er9547@gmail.com. On June 21, 2019, Google responded to the search warrant. The suspect was identified as Kevin Grant McMillan residing at a residence in Springfield, Greene County, Missouri.
>
> Springfield, Missouri, Police Department (SPD) Detective Thomas Hicks conducted further investigation as SPD was also investigating a case involving McMillan and eight-year-old Jane Doe 2. Amber Marie Baley reported to SPD Officer B. Loveland that McMillan called her and told her that he had fondled Jane Doe 2's vagina on one occasion in May. Baley stated that McMillan had also asked her to send nude images of Jane Doe 2. Jane was an eight-year-old child. On August 30, 2019, Jane Doe 2 was interviewed that the Springfield Child Advocacy Center by interviewer Alisha Richardson. During the interview, Jane Doe 2 stated that McMillan had touched her in her "private spot."
>
> Upon reviewing the data for er9547@gmail.com, Detective Hicks discovered the images from the Cybertip. According to the Google records, the images were distributed by McMillan to Casie Dee Rice using the Google account kayceeda9@gmail.com. McMillan and Rice communicated with each other via

2

email from March 24, 2019, through March 29, 2019, and the two discussed their interest in children. On March 29, 2019, McMillan sent Rice several images depicting child pornography. Based on the email conversations, Detective Hicks was able to identify additional Google accounts for McMillan and Rice. Detective Hicks applied for and received state search warrants for the additional Google accounts. Google responded to the search warrants on October 17, 2019. Within the data for McMillan's Google account the.true.cowboy.986@gmail.com, Detective Hicks located additional child pornography.

On November 4, 2019, Detective Hicks applied for and received a state search warrant for McMillan's residence in Springfield. On November 6, 2019, Detective Hicks and other members of the SPD executed the search warrant. While securing the residence, SPD SRT contacted McMillan and 15-year-old Jane Doe 1. SPD Detective Lee Walker, Detective Worland, and Detective Hicks conducted a post-*Miranda*, recorded interview with McMillan. In an interview with law enforcement, McMillan admitted the er9547@gmail.com and thetruecowboy986@gmail.com were his email accounts. McMillan confirmed he had been accessing child pornography and that he had shared it with Rice. McMillan stated he knew Baley and Jane Doe 2. During the search of McMillan's residence, law enforcement located and seized 10 electronic devices as evidence.

On November 8, 2019, Detective J. Edwards with the Branson, Missouri, Police Department (BPD) interviewed Rice. Rice admitted that McMillan had sent child pornography to her via Google and that she had received and sent child pornography with others through Facebook.

Springfield Police Department Computer Forensics Analyst Ryan Fraser conducted the analysis on the devices seized from McMillan. During a cursory search of McMillan's electronics collected during the search warrant, a file system on McMillan's Acer computer was located. A folder titled "exes" was located. There were sub-folders with females' names, and in the folders were images of adult women some of which were pornographic. One of the sub-folders titled "Christene" had a sub-folder labeled "baby girl." In the sub-folder "baby girl" from "Christene," there were a series of images of Jane Doe 3, a child less than five years of age. Some of the images of Jane Doe 3 were child pornography.

CFA Fraser noted there were chat messages recovered from Kik between Baley and McMillan between February 5, 2018, and February 10, 2018. In the messages, the two discuss McMillan engaging in sexually explicit conduct with Jane Doe 2, and McMillan asks for sexually explicit images of Jane Doe 2. On December 14, 2019, law enforcement interviewed Baley, and Baley admitted sending McMillan sexually explicit images of Jane Doe 2.

3

During the search of McMillan's electronics, CFA Fraser noted there were child pornography images of Jane Does 1, 2, and 3 were in several locations on multiple devices belonging to McMillan.

During a forensic examination of McMillan's HP laptop computer, CFA Fraser's examination located data within an Internet Operating System (IOS) backup. Within the IOS backup data, CFA Fraser located conversations exchanged through the multimedia messaging service (MMS) between McMillan and Angela Marie Brown. In one conversation, McMillan stated Jane Doe 1 was 13 years old and he wanted to drug and sexually assault Jane Doe 1. On February 5, 2018, McMillan sent Brown a child pornography image of Jane Doe 2. Throughout the conversations, McMillan and Brown had with each other from January 2017 until April 2019, McMillan and Brown exchanged incest related pornography, bondage pornography, bestiality pornography, child pornography, and child erotica. They also have conversations about having sexual contact with children and talk about having children together and impregnating them. Brown made comments indicating she would be interested in assisting McMillan in drugging and raping children and adult women. The messages located were from January 2017 through April 2019.

CFA Fraser was also able to locate partial Facebook conversations within the IOS backup. One recovered conversation was between McMillan and Brown. Within the Facebook conversation, the two extensively discussed engaging in sexual contact with other individuals, including children. McMillan sent images of Jane Doe 3 and the two discussed having sexual contact with children. On April 19, 2019, in a Facebook message exchange, Brown tells McMillan she would like it just to be her, the defendant, and McMillan for a while. Brown told McMillan this is so that they "can get the other started," to which McMillan asked, "What u me and her making the kid in to our sex toy?" The investigation revealed that both Brown and the defendant were living with McMillan at his Springfield residence in the Spring of 2019.

SMS and MMS messaging between McMillan and the defendant were located between January 1, 2018, and April 2, 2019. During the messaging, McMillan and the defendant exchanged bestiality pornography, incest related pornography, and bondage pornography. Within the IOS backup data, CFA Fraser also located partial Facebook conversations between McMillan and the defendant. One recovered conversation was between March 2019, and May 2019, in which the two extensively discussed engaging in sexual contact with other individuals, including children. In April of 2019, McMillan and the defendant discuss McMillan wanting to have sexual contact with a 13-year-old minor male, John Doe. For example, McMillan stated, "Wish [John Doe] was here so I could suck on him," and "I wanna make [John Doe] my cum slut." The defendant was personally familiar with John Doe.

4

Within the IOS back up there were also text and MMS messaging between McMillan and Baley. The messages recovered were between May 11, 2018, and July 11, 2019. The conversations demonstrated that Baley and McMillan repeatedly discussed getting Jane Doe 2 to engage in sexually explicit conduct.

On October 28, 2020, HSI TFO Joseph Fletcher and Detective Hicks interviewed the defendant in Nebraska. Post-*Miranda*, the defendant stated she met McMillan in 2015 or 2016 while she was residing in Missouri. The defendant and McMillan began dating and the defendant and Jane Doe 3 stayed over at McMillan's residence in Springfield three to four times in a four-month period. The defendant stated that McMillan had told her he had recorded Jane Doe 3 without her diaper on. The defendant also admitted that the two discussed McMillan engaging in sexually explicit activity with John Doe. The defendant described a period where she lived with McMillan and Brown and the three of them were in a relationship together. The defendant recalled receiving nude images of Jane Doe 2 from McMillan and McMillan describing sexual activity he wanted to engage in with Jane Doe 2. The defendant said there had been discussion of Jane Doe 2 and Baley coming to live with them. The defendant reported that McMillan would send her child pornography images and videos via text and Facebook Messenger.

HSI confirmed that all devices on which child pornography were located were manufactured outside the state of Missouri and would have had to cross state lines to enter. Furthermore, Facebook, Kik, SSM, and MMS utilized the Internet and/or a cellular network to function.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which she is pleading guilty.

5

5. **Statutory Penalties.** The defendant understands that, upon her plea of guilty to Count 1 of the indictment, charging her with child exploitation enterprise, the minimum penalty the Court may impose is not less than twenty (20) years' imprisonment, while the maximum penalty the Court may impose is not more than life imprisonment, not less than five (5) years' supervised release, a $250,000.00 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands, and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least five (5) years;

    d. if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to five (5) years, without credit for time previously spent on supervised release; however, if the Court revokes the supervised release because the defendant committed a criminal offense under chapter 109A, 110 (child pornography offenses) or 117 or Section 1201 or 1591 of Title 18 of the United States Code, the law may allow the Court to impose a period of imprisonment of five (5) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed life, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.  any sentence of imprisonment imposed by the Court will not allow for parole;

g.  the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h.  the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court.

7.  **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to production, receipt, and/or distribution of child pornography, or coercion and enticement of a minor for which it has venue and which arose out of the defendant's conduct described above.  The Government agrees to dismiss Counts 4, 7, and 11 at time of sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement.  If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence.  The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement.  The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional

7

charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's pleas of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts her plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

8

Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines section for Count 1 is U.S.S.G. § 2G2.6, which provides for a base offense level of 35;

    c. There are no agreements as to enhancements or cross-references.

    d. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

    e. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

    g. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the parties agree they may argue for a sentence outside the Guidelines range, the agreement by the parties is not binding

upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

10

      a.      oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

      b.      comment on the evidence supporting the charges in the indictment;

      c.      oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

      d.      oppose any post-conviction motions for reduction of sentence, or other relief.

14.    **<u>Waiver of Constitutional Rights.</u>**    The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

      a.      the right to plead not guilty and to persist in a plea of not guilty;

      b.      the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

      c.      the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

      d.      the right to confront and cross-examine the witnesses who testify against him;

      e.      the right to compel or subpoena witnesses to appear on her behalf; and

      f.      the right to remain silent at trial, in which case her silence may not be used against him.

The defendant understands that, by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that, if she pleads guilty, the Court may ask her questions about the offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against

11

her in a prosecution for perjury or making a false statement. The defendant also understands that she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

   b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

   a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

   b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

   c. The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse,

12

nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

      d.      Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

      e.      At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

      f.      The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

      g.      The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100.00 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing;

      h.      The defendant understands that in addition to the assessment imposed under section g, pursuant to 18 U.S.C. § 3014, because the defendant has pled guilty to an offense under 18 U.S.C. Chapter 110, the court shall assess an amount of $5,000 on the defendant, unless the court finds the defendant to be indigent;

      i.      The defendant certifies that she has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future; and

      j.      In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more,

13

the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that, in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal, or any leads

14

from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys, or any other party to induce her to enter her plea of guilty.

21. **Sex Offender Registration.** The defendant acknowledges that she has been advised, and understands that, by pleading guilty to the instant offenses, she will be required under the Sex Offender Registration and Notification Act (SORNA), a federal law, to register as a sex offender and keep the registration current in each of the following jurisdictions: where she resides; where she is employed; and where she is a student. The defendant also acknowledges that she understands that the requirements for registration include providing her name, her residential address, the names and addresses of any places where she is, or will be, an employee or student, or any other relevant information. The defendant further acknowledges that she understands that the requirement to keep the registration current includes registering in the jurisdiction in which she resides, is an employee, or is a student, and must be done within 72 hours of any such change in status. The defendant also agrees that she will provide her Probation Officer proof of

15

registration within 72 hours of release from imprisonment, and abide by all state and federal sex offender registration laws, as well as abiding by all of her Probation Officer's directives.

The defendant acknowledges that she has been advised, and understands, that failure to comply with these obligations could subject him to either state or federal prosecution for failure to register, pursuant to Title 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Dated: 7/28/2022

By *[signature]*

**Teresa A. Moore**
United States Attorney

Ami Harshad Miller
Assistant United States Attorney
Missouri Bar No. 57711

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 7/28/22

*[signature]*
Christine Marie Rossiter
Defendant

I am defendant Christine Marie Rossiter's attorney. I have fully explained to her her rights with respect to the offense charged in the indictment. Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Christine Marie Rossiter's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 7/28/22

*[signature]*
Erica Mynarich
Attorney for Defendant

17